AYRES, Judge.
This is a suit to recover damages for injuries sustained in a head-on automobile collision. From a judgment in favor of plaintiffs, Jerry G. Shafer, Phillip Dale Gill, and Willie A. Byrd, and against defendants, Talmadge O. Langston and Dixie Auto Insurance Company, in solido, plaintiffs and defendant Dixie Auto Insurance Company appeal.
Plaintiffs were traveling north in a 1964 Ford owned and operated by Gill, and defendant Langston was traveling south driving a 1962 Ford when the accident occurred on Louisiana Highway No. 1 in Caddo Parish approximately one mile north of the city limits of Shreveport.
The trial court determined that the negligence of Langston was the sole cause of the collision and that the 1962 Ford he was driving was an insured vehicle as a “temporary substitute automobile” for the 1965 Dodge described in the public liability insurance policy, in full force and effect at the time of the accident, issued by Dixie Auto Insurance Company to Talmadge O. Langston. The alternative demand of plaintiffs against Great American Insurance Company, the uninsured motorist carrier for Shafer, was accordingly dismissed, as was the third-party demand of Great American against Langston in the event it became liable under this coverage to Shafer.
Talmadge O. Langston and Great American Insurance Company have neither appealed nor answered any appeals made from this judgment.
The issues on appeal are primarily whether the 1962 Ford driven by Langston is in fact covered under the policy issued by Dixie Auto Insurance Company, such coverage being denied by Dixie, and whether the trial court has in any way abused its discretion in the awards made to plaintiffs. We are not concerned that the accident was caused entirely by Langston’s negligence, for this is not disputed.
After careful examination of the Dixie Auto Insurance Company’s policy, we conclude that in order that there be coverage of the 1962 Ford, the automobile must fall within one of three classifications listed and defined in the policy as follows:
“IV(a)(l) Described Automobile — the motor vehicle or trailer described in this policy or, if none is so described, with respect to coverages A, B and di *65 vision 1 of coverage C, any private passenger automobile owned on the effective date of this policy by the named insured or by his spouse if a resident of the same household;
******
“(3) Temporary Substitute Automobile — under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
“(4) Newly Acquired Automobile — an automobile, ownership of which is acquired, by the named insured or his spouse if a resident of the same household if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date, but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy. The insurance with respect to the newly acquired automobile does not apply to any loss against which the named insured or such spouse has other valid and collectible insurance. Under coverages D, E, F, G and 1, when a limit of liability is expressed in the declarations as a stated amount, such limit as to the newly acquired automobile shall be replaced by the actual cash value. The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile.” (Emphasis supplied.)
The “described automobile” in the policy was a 1965 Dodge, not the 1962 Ford. No further discussion of this provision is necessary to realize that coverage is not provided under this classification.
The key to whether the Ford automobile might be regarded as a “temporary substitute automobile” under the facts and circumstances is ownership. If Langston, and not his daughter as determined by the trial court, is the owner, then the automobile cannot be considered a “temporary substitute automobile,” for the policy clearly states that it must be “an automobile not owned by the named insured.”
Careful consideration of the record discloses the preponderance of the evidence establishes that Langston had owned the 1962 Ford since January 27, 1970, when he purchased the car in his own name. All payments on the car, except for $300.00 paid by his daughter, Kathy, and her husband, Ronald Plants, were made from the joint account of the Langstons. In fact, the final payment of $165.90 was made from this account with a check endorsed by Mrs. Langston. After receiving this last payment, Shreveport Auto Finance, holder of the mortgage on the car, forwarded the title to Langston.
Apparently, the car was purchased for the use of Langston’s daughter while she was in high school. She married shortly after graduation and took the car with her and kept it with her for almost two years until she separated from her husband and returned home, leaving it behind in an inoperable condition. There is no showing, however, the Langston executed any instrument transferring the automobile to his daughter or that she ever redonated the car to him, as he testified. It is clear from Langston’s testimony that he had control of the car and could take it back at any time.
After his 1965 Dodge was wrecked, Langston replaced the battery in the 1962 Ford and did whatever else was necessary to put the car in running order. He then began using it and, as he testified, it was the only car he used, and he used it when *66 ever he so wanted. Langston and his daughter both stated that he took possession again permanently, and he also testified that he intended to continue using it and even trade it if he so desired.
Since title, control, and unrestricted use was had by Langston, we cannot but conclude that he was always the owner of the car. The provision as to a “temporary substitute automobile” does not therefore afford coverage to the 1962 Ford.
For coverage in the last category, as a “newly acquired automobile,” Langs-ton, as the named insured, would have had to acquire ownership within a thirty-day time limit or must have notified Dixie that the 1962 Ford was to replace the 1965 Dodge as the described automobile. There is no evidence that any such notice was given prior to the accident on February 28, 1973, but to the contrary the insurance agency was not even aware that Langston owned a Ford until after the accident. The thirty-day grace period of course is not applicable, since we determined that Lang-ston had owned the Ford automobile since 1970.
The Dixie Auto Insurance Company’s liability policy also contains a clause providing coverage for the “use of other automobiles,” but the following exclusion to such coverage is applicable:
“(d) This insuring agreement does not apply:
“(1) to any automobile owned by or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse;
******
(Emphasis supplied.)
Since the testimony is clear that Langston, the named insured, had the regular and unrestricted use of the automobile and in fact was the owner, coverage under this provision is specifically excluded.
Finding no provision under the Dixie Auto Insurance Company which provides coverage for the 1962 Ford driven by Tal-madge O. Langston, we must conclude that all claims against Dixie Auto Insurance Company must be rejected.
Although there is no coverage under the Dixie insurance policy, Jerry G. Shafer is entitled to recover for the damages sustained by him from Great American Insurance Company, his uninsured motorist carrier. Great American did not appeal nor answer the appeals from this judgment; therefore the dismissal .of its third-party demand against Langston has become final and not subject to appeal. Great American is, however, entitled to credit for the two payments for medical expenses made to Shafer totaling $537.32.
We find no abuse of discretion in the amounts of the awards made by the trial court. Phillip Dale Gill suffered a bruised knee and some minor cuts and was unable to work as a security guard for five days. Willie A. Byrd suffered a slight concussion and a severe laceration on the forehead when his head hit the windshield, an impact for which he spent one night in the hospital. The laceration required stitches and left a permanent scar approximately two-and-a-half inches long. Jerry G. Shafer also struck the windshield and suffered damage to a partial denture in his mouth which had to be replaced. Shafer also cut the extensive tendon on his left forefinger, necessitating therapy and leaving him with a five percent disability.
In accord with the above findings the judgment of the trial court is recast to read:
It is ordered, adjudged, and decreed there be judgment in favor of Phillip Dale Gill and against Talmadge O. Langston in the amount of Seven Hundred and No/100 ($700.00) Dollars.
It is further ordered, adjudged, and decreed there be judgment in favor of Willie A. Byrd and against Talmadge O. Lang- *67 ston in the amount of Two Thousand Five Hundred and No/100 ($2,500.00) Dollars.
It is further ordered, adjudged, and decreed there be judgment in favor of Jerry G. Shafer and against Talmadge O. Lang-ston and Great American Insurance Company, in solido, in the amount of Three Thousand Five Hundred and No/100 ($3,500.00) Dollars and that Great American Insurance Company be credited with the amount of Five Hundred Thirty-Seven and 32/100 ($537.32) Dollars.
It is further ordered, adjudged, and decreed that the demands of Great American Insurance Company against Talmadge O. Langston be, and the same are hereby, rejected.
It is further ordered, adjudged, and decreed that the judgment rendered herein bear interest at the rate of Seven (7%) percent per annum from judicial demand.
The judgment appealed, as recast and amended, is affirmed.
Defendants Talmadge O. Langston and Great American Insurance Company are assessed with all costs including the cost of this appeal.